Peter Kristofer Strojnik, SBN 242728
pstrojnik@strojniklaw.com
Law Offices of Peter Strojnik
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
Telephone: (415) 450-0100

Attorneys for Plaintiff THERESA BROOKE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim,<br><br>Plaintiff,<br><br>vs.<br><br>SHANDILYA INC., a California corporation,<br><br>Defendant. | Case No: 8:24-cv-01182-KES<br><br>**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**<br><br>Date:       August 20, 2024<br>Time:      10:00 a.m.<br>Judge:     Karen E. Scott |

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 20, 2024 or as soon thereafter as the matter may be heard before the Honorable Karen E. Scott in Courtroom 6D, in the United States District Court located at 411 West Fourth Street, Santa Ana, California, Plaintiff Theresa Brooke will and hereby does move this Court for an Order entering default judgment against Defendant pursuant to Rule 55, Federal Rules of Civil Procedure. The grounds for this Motion are that Defendant has failed to defend within the time proscribed by Rule 12 and the Clerk of the Court has entered default against Defendant.

With this Motion, Plaintiff respectfully prays for the entry of judgment against Defendant SHANDILYA INC., a California corporation in the following particulars:

- ✓ Declaratory relief that Defendant Title III of the Americans with Disabilities Act;

- ✓ Injunctive relief ordering Defendant to modify the hotel to comply with Section 208.3 of the 2010 Standards of Accessible Design;

- ✓ Closure of the hotel if Defendant does not remediate the barrier alleged within 60 days of Judgment;

- ✓ Damages in the amount of $4,000.00;

- ✓ Attorneys fees in the amount of $5,550.00; and,

- ✓ Costs in the amount of $490.00.

This Motion is based upon the below Memorandum of Points and Authorities and exhibits thereto. A proposed form of Order and Judgment is attached hereto.

RESPECTFULLY SUBMITTED this 23d day of July, 2024.

**LAW OFFICES OF PETER STROJNIK**

By /s/ Peter Kristofer Strojnik
Peter K. Strojnik (242728)
Attorneys for Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES

**I. INITIATION STATEMENT REGARDING DEFENDANT'S INTENTIONAL DISREGARD OF THESE PROCEEDINGS**

Plaintiff's counsel has made every imaginable attempt to extend the courtesy to Defendant to litigate this case on the merits. *See* Exhibit 1 at ¶¶12-14 (Decl. of Counsel). It is apparent that Defendant is ignoring these proceedings. *Id.*

**II. FACTUAL BACKGROUND**

**A. Facts Alleged in the Complaint**

Plaintiff Theresa Brooke ("Plaintiff") is a disabled woman who only has one leg; she ambulates with the aid of a wheelchair. Doc. 1 at ¶1. Defendant owns and/or operates and does business as the Santa Ana Travel Inn located at 2005 North Main Street, Santa Ana, California 92706 (the "Hotel"). *Id.* at ¶2.

Plaintiff is an avid traveler across California for purposes of leisure travel and to "test" whether various hotels comply with disability access laws, doing so once per month. *Id.* at ¶10. In April of this year, Plaintiff visited Defendant's hotel and sought to park and access the Hotel. *Id.* at ¶11. However, the disabled parking spots at the Hotel were not at the shortest route to the lobby entrance; instead, there were many non-disabled spots much closer to the entrance. *Id.* As a result of the disabled parking not being closest to the entrance, Plaintiff was deterred from entering and left the Hotel. *Id.*

Despite being deterred in April, Plaintiff will be returning to the Hotel to actually lodge there in November of this year. *Id.* at ¶12. In fact, Plaintiff has a reservation to lodge at the Hotel for November 12, 2024, during one of her many trips across California for leisure travel and testing ADA compliance. *See* Exhibit 2 (Decl. of Theresa Brooke). It is Plaintiff's hope that when she arrives for her reservation, Defendant will have made the simple remediation of moving a disabled parking spot to the shortest route to the entrance, as it is required to be. *Id.*

**III. ANALYSIS**

**A. Standard Governing Motions for Entry of Default Judgment**

3

A district court may enter default judgment against a party whose default has been entered under Rule 55(b) of the Federal Rules of Civil Procedure. *PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002).

The following factors should be considered when deciding whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72.

Once default has been entered, the allegations contained in the complaint, except for damages, are deemed admitted by the non-responding defendant and will be taken as true. Fed.R.Civ.P. 8(b)(6); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Still, the court must consider "whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil 3d 2688, at 63 (1998) (footnote omitted); *see also Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default").

If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the "amount and character" of the relief that should be awarded. *Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005).

**B. Procedural Requirements**

Before a court can enter default judgment against a defendant, the plaintiff must satisfy the procedural requirements for default judgments: (1) indicating when and against which party default has been entered; (2) identifying the pleading as to which

default has been entered; (3) indicating whether the defaulting party is an infant or incompetent person; (4) stating that the Servicemembers Civil Relief Act, 50 App. U.S.C. 521, does not apply; and (5) affirming that notice has been served on the defaulting party if required by Rule 55(b)(2). LRCiv 55-1, 55-2; *PepsiCo, Inc.*, 238 F.Supp.2d at 1174.

Here, Plaintiff has satisfied the procedural requirements.

1) Default was entered against Defendant Shandilya Inc. on July 16, 2024 as to the Complaint. Doc. 10;
2) Default was entered as to the Doc. 1 Complaint as to Defendant. Docs. 1, 10;
3) The defaulting party is not an infant or incompetent person;
4) The Servicemembers Civil Relief Act is not applicable in this case; this is an ADA case; and,
5) Although notice of these moving papers is not required by Rule 55(b)(2), Plaintiff *will* concurrently provide notice of these moving papers. Exhibit 1.

## C. The Eitel Factors

The court must next determine whether the *Eitel* factors are met.

### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Here, Plaintiff has no recourse other than judgment; Defendant refuses to respond to lawful service. Ex. 1. *See PepsiCo, Inc.*, 238 F.Supp.2d at 1177 (plaintiffs would have no other recourse if a default judgment were not entered). As indicated above, Plaintiff has made every conceivable attempt to allow Defendant to respond to the Complaint, and Defendant has ignored her. *Supra*. Therefore, Plaintiff would suffer prejudice without recourse against Defendant.

### 2. Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint

The second and third *Eitel* factors "require that a plaintiff state a claim on which it may recover." *Discovery Communications, Inc. v. Animal Planet, Inc.*, 172 F.Supp.2d

1282, 1288 (C.D. Cal. 2001) ("The Ninth Circuit has suggested that the two *Eitel* factors involving the substantive merits of Plaintiff's claims and the sufficiency of the complaint [ ] require that plaintiff's allegations state a claim on which it may recover.'" quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). Here, Plaintiff makes claims and seeks default judgment under the ADA and UCRA.

      a. *ADA Discrimination*

Title III of the ADA prohibits discrimination by public accommodations. It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182(a). Here, Plaintiff alleges that Defendant owns the public accommodation (a hotel). Defendant is therefore liable for violating the ADA if Plaintiff can show that she suffered discrimination at the hotel due to her disability. Discrimination under Title III includes "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." *Id.*, 12182(b)(2)(A)(iv). The term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." *Id.*, 12181(9).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). In addition, "to succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA and (2) the removal of the barrier is readily achievable." *Johnson v. Beahm*, 2011 WL 5508893, *2 (E.D. Cal. Nov. 8, 2011).

6

| | |
|---|---|
| 1 | **(1) Whether Plaintiff Has Standing to Bring an ADA Claim** |
| 2 | "[A]s with other civil rights statutes, to invoke the jurisdiction of the federal |
| 3 | courts, a disabled individual claiming discrimination must satisfy the case or |
| 4 | controversy requirement of Article III by demonstrating his standing to sue at each |
| 5 | stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th |
| 6 | Cir. 2011). There are two ways to demonstrate ADA standing. A plaintiff must show |
| 7 | that she either (1) suffered an "injury-in-fact coupled with an intent to return," or (2) is |
| 8 | deterred from returning to the premises after gaining actual knowledge of an ADA |
| 9 | barrier. *Chapman v. Pier I Imports (U.S.), Inc.*, 631 F.3d 939, 944 (9th Cir. 2011). |
| 10 | Plaintiff shows ADA standing via deterrence and injury-in-fact coupled with an |
| 11 | intent to return. The regurgitation by ADA defendants of "intent to return" is really an |
| 12 | examination of whether there is a "sufficient likelihood that plaintiff will again be |
| 13 | wronged in a similar way." *Chapman*, 631 F.3d at 948. Here, Plaintiff has a reservation |
| 14 | to return and stay at the Hotel again in November 12, 2024 of this year in furtherance of |
| 15 | her allegation of her plans to return in November 2024. Exhibit 2. Several Central |
| 16 | District courts have held that a reservation to lodge at a hotel sufficiently shows an |
| 17 | intent to return and be harmed again in a similar way. *See e.g. Brooke v. CSP* |
| 18 | *Hospitality LLC*, EDCV 21-203-JGB at Dkt. 15 (holding that a reservation to lodge at |
| 19 | hotel creates an intent to return). Given her reservation to lodge at the Hotel in |
| 20 | November of this year and the fact that she travels across Orange County and Los |
| 21 | Angeles once per month, the likelihood of a repeat injury is high. Accordingly, she |
| 22 | personally encountered the lack of compliant disabled parking at the Hotel and will |
| 23 | likely suffer the injury again in November should Defendant not comply with the ADA. |
| 24 | **(2) Whether Plaintiff Has Shown She is Disabled and the Hotel is a PPA** |
| 25 | The ADA defines disability as "[a] physical or mental impairment that |
| 26 | substantially limits one or more major life activities …[,] a record of such an |
| 27 | impairment[,] or being regarded as having such an impairment. 42 U.S.C. 12102(1). |
| 28 | Major life activities as defined by the ADA including walking and standing. *Id*., |

12102(2). Here, Plaintiff alleges that she relies on a wheelchair for locomotion and that she has only one leg. Plaintiff is disabled under the ADA. Additionally, a hotel is a PPA pursuant to 42 U.S.C. §12181(7)(A).

### (3) Whether Plaintiff Has Shown That the Hotel's Architectural Barriers Denied Her Public Accommodations Due to Disability

The next two elements of an ADA architectural barriers claim evaluate whether architectural barriers worked to discriminate against the plaintiff on account of physical disability. *See Chapman*, 631 F.3d at 950 ("an ADA plaintiff suffers an injury in fact either because discriminatory barriers deter him from returning to a facility or because they 'otherwise interfere with his access to' the facility," quoting *Doran*, 524 F.3d at 1042 n. 5).

Here, Section 208.3 of the 2010 Standards require that disabled parking spots be on the shortest accessible route to the building's entrance. Plaintiff has shown in her Doc. 1 allegations and Exhibit 2 Declaration that the disabled parking was not on the shortest accessible route, that there were numerous non-disabled parking spaces much closer to the lobby entrance. Doc. 1; Exhibit 2. Accordingly, Defendant has violated Section 208.3.

### (4) Whether Modifying the Disabled Parking is Readily Achievable

Whether removal of a barrier is readily achievable involves consideration of four factors: " A) the nature and cost of the action needed …; B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; C) the overall financial resources of the covered entity; the overall size of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; [and] the geographic separateness, administrative or

1  fiscal relationship of the facility or facilities in question to the covered entity."
2  *Hubbard*, 433 F.Supp.2d at 1168 (citing 42 U.S.C. 12181(9)).
3        Here, Plaintiff's allegation that removal of the barrier at issue is readily
4  achievable, which is accepted as true, is sufficient to satisfy her burden of production.
5  *See, e.g., Johnson v. Hall*, 2012 WL 1604715, *3 (E.D. Cal. May 7, 2012) (plaintiff's
6  allegation that architectural barriers were "readily removable" and that he sought
7  injunctive relief to remove all readily achievable barriers satisfied his burden); *Beahm*,
8  2011 WL 5508893 at *3 (holding that plaintiff's allegation that architectural barriers
9  were readily removable was sufficient because it was accepted as true on default; *see*
10 *also Sceper*, 2009 WL 3763823 at *4 (granting default judgment on plaintiff's ADA
11 claim even though plaintiff did not specifically allege that removal of barriers was
12 readily achievable, and pled instead that defendants were required to remove
13 architectural barriers). Indeed, all that is required is to convert a closer non-disabled
14 parking spot into a disabled parking spot, which requires the purchase of a disabled
15 parking sign, a stencil and some paint.

    **b.  Discrimination Under UCRA**

17       The Unruh Civil Rights Act and the California Disabled Persons Act incorporate
18 ADA standards, so a "violation of the ADA also constitutes a violation of both the
19 Unruh Act and the DPA." *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal.
20 App. 4th 571, 586, 81 Cal. Rptr. 3d 144 (2008); *Molski*, 481 F.3d at 731. Since Plaintiff
21 presents a cognizable claim for relief under the ADA, she also presents the same under
22 Unruh.
23       It should also be noted that Plaintiff alleges and testifies (Exhibit 2) that she
24 suffered embarrassment and difficulty in accessing the Hotel, which is something a
25 person that can walk can do very easily, but she could not at the Hotel. She was
26 effectively discriminated against at the Hotel.

### c. Conclusion RE Second and Third Eitel Factors

Taking the facts alleged in the Complaint as true and adding the evidence presented as exhibits hereto, Plaintiff has shown that the second and third *Eitel* factors weigh in favor of entry of default judgment.

### 3. The Sum of Money at Stake

The fourth Eitel factor balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct." *PepsiCo, Inc*., 238 F.Supp.2d at 1176. Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct. *See Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, *12 (N.D. Cal. May 29, 2007).

Here, Plaintiff seeks $10,040.00, including statutory damages, attorneys' fees and costs. This amount, plus any amount that would have to be spent to comply with an injunction, would be the entirety of Defendant's liability should the court enter default judgment. Courts frequently enter default judgments in ADA cases that impose similar financial liabilities on a non-responding defendant who has not shown a willingness to comply with the ADA. *See, e.g. Moore v. Cisneros*, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012) (noting that an award of $10,119.70 in the context of a default judgment was "not a particularly large sum of money, nor does it appear unreasonable in light of Defendant's actions"); *Johnson v. Huynh*, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009) (holding that $12,000 was a "relatively small award of damages" in a default judgment case); *Mantic Ashanti's Cause ex rel Pinnock v. Darwish Plaza*, 2006 WL 1360969 (S.D. Cal. Apr. 21, 2006) (finding the amount at stake reasonable when plaintiffs sought a total of $16,276.68 consisting of $12,000 in statutory damages for, *inter alia*, architectural entrance barriers and impermissibly narrow paths of travel). The fourth *Eitel* factor is satisfied.

### 4. The Possibility of Dispute

The next *Eitel* factor considers the possibility that material facts may be in dispute. *PepsiCo, Inc*., 238 F.Supp.2d at 1177; *Eitel*, 782 F.2d at 1471-72. Here, there is

no possibility of dispute, as Defendant has not challenged the allegations in the Complaint despite proper service. As indicated above, Plaintiff has made reasonable efforts to allow Defendant to litigate this matter on the merits. *Supra*.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default may be the product of excusable neglect. *PepsiCo, Inc*., 238 F.Supp.2d at 1177. Here, there is no neglect, as Defendant has ignored the seriousness of this lawsuit. This is so common in ADA cases that it appears intentional.

### 6. Policy of Deciding Cases on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere enactment of Rule 55(b) indicates, however, that "this preference, standing alone, is not dispositive." *PepsiCo, Inc*., 238 F.Supp.2d at 1177. Indeed, "Defendant's failure to answer Plaintiff's Complaint makes a decision on the merits impractical, if not impossible." *Id*. Therefore, the seventh *Eitel* factor weighs in favor of entry of default judgment.

## D. The Character and Amount of Plaintiff's Recovery

Rule 54(c) limits the relief that can be sought in a motion for entry of default judgment to that identified in the complaint. Fed.R.Civ.P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"). Defaulting defendants are not deemed to have admitted facts concerning damages alleged in the complaint. *PepsiCo, Inc*., 238 F.Supp.2d at 1177.

### 1. Statutory Damages

Plaintiff seeks statutory damages at the statutory minimum of $4,000.00 pursuant to UCRA. Cal. Civ. Code 52(a). Proof of actual damages is not a prerequisite to the recovery of minimum statutory damages. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000). To recover statutory damages, the plaintiff need only show that he was denied full and equal access, not that he was wholly excluded from enjoying defendant's services. *Id*.; *Hubbard v. Twin Oaks Health and Rehabilitation Center*, 408

1  F.Supp.2d 923, 932 (E.D. Cal. 2004). "A plaintiff is denied full and equal access only if
2  the plaintiff personally encountered the violation of a particular occasion, or the
3  plaintiff was deterred from accessing a place of public accommodation on a particular
4  occasion." Cal. Civ. Code. 55.56(b).
5       Here, Plaintiff alleges and testifies that she personally encountered a barrier in
6  violation of Section 208.3 violation, that she experienced difficulty and embarrassment,
7  and that she was denied full and equal access because presumably, persons who can
8  walk would not experience the difficult of walking to a street to access the lobby or be
9  required to park so far away. Exhibit 2. Accordingly, statutory damages are appropriate.
10      2.  <u>Injunctive Relief</u>
11      A court may grant injunctive relief for violations of Unruh under Civil Code
12 52.1(h). To be entitled to injunctive relief under 42 U.S.C. 12188(a)(2), the plaintiff
13 must show that Defendant has violated the ADAAG. "In the case of violations of this
14 title, injunctive relief shall include an order to alter facilities to make such facilities
15 readily accessible to and usable by individuals with disabilities …." *Id*.; see *Moeller v.*
16 *Taco Bell*, 816 F.Supp.2d 831, 859 (N.D. Cal. 2011). A plaintiff is not required to
17 satisfy the other prerequisites generally needed for injunctive relief since "the standard
18 requirements for equitable relief need not be satisfied when an injunction is sought to
19 prevent the violation of a federal statute which specifically provides for injunctive
20 relief." *Moeller*, 816 F.Supp.2d at 859 (quoting *Antoninetti v. Chipotle Mexican Grill,*
21 *Inc*., 643 F3d 1165, 1175-76 (9th Cir. 2010)). Thus, injunctive relief is proper when
22 architectural barriers at defendant's establishment violate the ADA and removal of the
23 barriers is readily achievable. *See e.g. Moreno v. La Curacao*, 463 Fed.Appx. 669, 670
24 (9th Cir. Dec. 23, 2011) (Unpub. Disp.); *Johnson v. Singh*, 2011 WL 2709365, *3 (E.D.
25 Cal. July 11, 2011); *Sceper*, 2009 WL 3763823 at *4.
26      Here, and as noted above, Plaintiff properly pled a violation of the ADA because
27 of Defendant's violation of Section 208.3 of the 2010 Standards. Also noted above, the
28 allegation that it is readily achievable to modify the disabled parking is accepted as true.

Accordingly, injunctive relief compelling Defendant to remove barriers at the hotel facilities so that it is readily accessible to and usable by individuals with disabilities is therefore appropriate.

      3.  <u>Attorneys' Fees</u>

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This "lodestar" figure presumptively provides an accurate measure of reasonable fees. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). "The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional circumstances, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen*, 214 F.3d at 1045 (quoting *Hensley*, 461 U.S. 424) (internal quotation marks omitted).

To get to the lodestar figure, a plaintiff must submit "satisfactory evidence … that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984). The relevant community is that in which the district court sits. *Schwartz v. Secretary of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

Here, Plaintiff's counsel seeks an hourly rate of $750.00 per hour based on his skill, experience and qualifications, which the Central District has approved. Exhibit 1 at ¶8. Plaintiff's counsel has been an attorney for nearly 20 years and has prosecuted Title III ADA cases for nearly a decade. Indeed, Plaintiff's counsel has prosecuted approximately 1,000 cases and was the first to argue what the Ninth Circuit held in *CREEC* (personal knowledge of a barrier is not required for ADA standing). Additionally, the number of hours billed is far from excessive. Since Plaintiff's counsel

has filed numerous Title III lawsuits, the drafting of the complaint and pre-filing research is streamlined to the extent possible to ensure compliance with Rule 11. The total amount of fees requested in the amount of $5,550.00 is reasonable and not excessive.

4. <u>Costs</u>

Plaintiff also seeks costs in the amount of $490.00, which represents the filing fee and other minor but necessary costs. Exhibit 1. This cost request is reasonable.

**IV.  CONCLUSION**

For the foregoing reasons, judgment should be entered as requested.

RESPECTFULLY SUBMITTED this 23d day of July, 2024.

**LAW OFFICES OF PETER STROJNIK**

By <u>/s/ Peter Kristofer Strojnik</u>
   Peter K. Strojnik (242728)
   Attorneys for Plaintiff